UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| JOANN M. MATILLA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 04-380-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| SOUTH KENTUCKY RURAL | ) | **MEMORANDUM OPINION** |
| ELECTRIC COOPERATIVE | ) | **AND ORDER** |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

This matter is pending before the Court for consideration of Defendant South Kentucky Rural Electric Cooperative Corporation's ("SKRECC") Motion *in limine* to limit the expert testimony of James Geiger on behalf of Plaintiff Joann Matilla. [Record No. 30] Also before the Court is a motion by SKRECC for extension of time to identify expert witnesses. [Record No. 31] Because the Court finds that Matilla has been dilatory in the discovery process and because Geiger's additional expert opinion has been submitted well outside the time permitted, Defendant SKRECC's Motion *in limine* will be granted. As a result, James Geiger's testimony will be limited to matters covered in his opinion submitted on or about June 16, 2005. Similarly, Defendant SKRECC's motion for extension of time will be granted. SKRECC will be given until February 15, 2006, to identify expert witnesses addressing Plaintiff's alleged injuries and damages claims.

## I.    BACKGROUND

On February 16, 2004, Matilla and Third-Party Defendants Mike Pittman and Jeff Gregory were allegedly trespassing on property owned by Olive Harness for the alleged purpose of illegally cutting down trees.  One of these trees, felled by Matilla, Pittman and Gregory, became entangled in power lines owned and operated by SKRECC.  This entanglement forced the line to the ground where it allegedly struck Matilla on the head.  This action was filed in this Court on August 11, 2004.

On November 22, 2004, this Court entered its Scheduling Order establishing a deadline for Rule 26 disclosures.  Initial disclosures of information under Rule 26(a)(1) was due by December 1, 2004.  Matilla was given until June 15, 2005, to disclose the written reports of any experts to be used at trial.  SKRECC then had until September 15, 2005, to disclose the same expert information.  Supplementation under Rule 26(e) was due within 30 days of discovery of new information, but no later than November 15, 2005.  Discovery was to close on December 1, 2005.

Matilla failed to provide the initial disclosure by the deadline.  On January 4, 2005, a conference call was held by Magistrate Judge J.B. Johnson Jr. At the request of SKRECC. Matilla was then given until January 18, 2005, to provide the required initial disclosures.

On June 15, 2005 (the deadline for Matilla to disclose expert witnesses and their reports), Matilla requested an extension until September 15, 2005, to disclose damage experts.  [Record No. 12]  The next day, one day after the deadline,  Matilla filed an expert disclosure of James Geiger. (the "First Opinion")  [Record No. 13]  The Court partially granted Matilla's motion for

an extension, giving her until September 1, 2005, to file additional expert disclosures. The Court also extended until October 15, 2005, SKRECC's time for filing the same information concerning its experts. [Record No. 15]

On September 1, 2005, Matilla again filed for an extension of time to disclose damage experts. [Record No. 17]  Again, the Court partially granted Matilla's motion, giving the Plaintiff until October 1, 2005, make expert disclosures concerning the damages claimed. [Record No. 19] SKRECC's time for making same disclosures was extended until November 15, 2005. This time, Matilla was warned that the Court was not inclined to grant any further extensions of time. On October 4, 2005, Matilla filed the disclosure of John Tierney, a vocational economist. [Record No. 21]

## II.    ANALYSIS

SKRECC argues that Matilla violated Rule 26(a)(2)(B)[1] by failing to make timely disclosure of Geiger's opinion regarding the hazardous condition of the breaker box (the "Second Opinion") until November 15, 2005 . This failure, they argue, requires an automatic

---

[1]    Rule 26(a)(2)(B) provides that, "[e]xcept as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years." Rule 26(a)(2)(B), Fed. R. Civ. Pro.

sanction of exclusion unless Matilla can show the violation to be justified or harmless.  [Record No. 30, pg. 4-5]

In *Roberts v. Galen of Virginia, Inc*., the Sixth Circuit held that "Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a), that is, it 'mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.'"  325 F.3d 776, 782 (6th Cir. 2003) (internal citations omitted).  The Sixth Circuit emphasized that the sanction was automatic, absent a showing of harmlessness or substantial justification. *Id., citing Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) ("the sanction of exclusion is automatic and mandatory . . .").  The burden to prove harmlessness or substantial justification shifts to the party to be sanctioned once a violation of Rule 26 has been shown.  *Roberts*, 325 F.3d at 782.

## A.    Geiger's Two Opinions

James Geiger's written report, provided by Matilla on or about June 16, 2005, opined that SKRECC had "violated its obligation to exercise the highest degree of care in allowing of this line [sic] to remain energized and described the line as unused".  [Record No. 32, pg. 5]  His opinion was that the line should have been de-energized because it was "permanently abandoned" per the National Electric Safety Code.  This opinion was based on a visit he made to the site on October 8, 2004, as well as account history and other records provided by SKRECC.  A notation in the records from 1997 indicated that no electricity was being used, but that monthly payment on the account was current through the date of the accident.  [Record Nos. 30, 32]

On August 31, 2005, Matilla took the deposition of Carol Wright, an employee of SKRECC. At this deposition, Matilla alleges that "it became apparent" that SKRECC was maintaining that the line was not abandoned. [Record No. 32, pg. 3]

On the morning of his deposition, Geiger made a second visit to the scene of the accident to "make closer observations", although there was nothing new at the scene that was not observable on his initial visit over a year prior. [Record No. 32, pg. 3] During the November 15, 2005, deposition, Geiger first opined that the line should have been de-energized because the meter box and outlets created a hazard, an opinion he had not previously reduced to writing. [Record No. 33]

It is on the basis of this new opinion that SKRECC made the motion *in limine*. [Record No. 30] The deadline for Matilla to disclose the written opinion of experts to be used at trial was June 15, 2005. Geiger's opinion was not provided to SKRECC until his deposition five months later on November 15, 2005. In addition, the opinion reduced to writing. Instead, it came out during the deposition, such that counsel for SKRECC had no opportunity to adequately prepare to address it prior to the deposition.

### B.    Violations of Rule 26

The record is clear that Matilla has violated the Rule 26 scheduling order in this case on multiple occasions. Matilla failed to file the initial disclosures on December 1, 2004, and did not do so until directed by the Magistrate Judge over a month later. She was also tardy in her filing of Geiger's initial expert disclosure, although only by a days.

However, it is the provision of the second opinion, offered by Geiger in deposition on November 15, 2005, that is the most serious violation of Rule 26. Defendant first requested to take Geiger's deposition on June 17, 2005, shortly after the close of time to disclose expert testimony. Geiger, however, was not made available for deposition until November 15, 2005.

Additionally, despite Matilla's claims that she had been granted an extension of time to file Geiger's opinion, she had only asked for an extension of time to disclose expert testimony regarding damages suffered. As of November 15, 2005, discovery of expert witness testimony regarding liability had been closed for five months. To the extent that Geiger's opinion regarding the hazardous condition was a new and distinct one, rather than supplementation as Matilla argues[2], it was not submitted until five months after the Court's deadline; likewise, it was not reduced to writing as required by Rule 26(e).

Matilla argues that this second opinion was actually supplementation under Rule 26(e). As such, it could be considered timely filed within 30 days of the discovery of new information, so long as it was filed no later than November 15, 2005, as per this Court's Scheduling Order. Similarly, Matilla argues that as a supplementation, the second opinion did not need to be reduced to writing as it was fully disclosed during Geiger's deposition.

Despite Matilla's largely unsupported assertions that Geiger's second opinion should be considered a supplementation, SKRECC is correct that it does not meet the applicable standard. Moreover, even assuming that the second opinion were to be considered supplementation, it was filed much later than 30 days after the discovery of the information giving rise to the opinion.

---

[2]     This assertion goes more towards a determination of the harmlessness of any change in Geiger's testimony. This argument is addressed more fully below.

The duty to supplement under Rule 26(e) is designed to prevent a party from surprising his adversary in setting forth new facts not disclosed during discovery in sufficient time to adequately respond to them.  The subsection of the rule is intended to protect the party against whom the new facts would be used.  *PIC, Inc. v. Prescon Corp.*, 485 F. Supp. 1299, 1301 (D. Del. 1980).  Rule 26(e) does not exist to allow the proponent of the new information to disclose the information after the close of the applicable discovery period.  "Parties need not be allowed to bring in through the back door those issues which they were too late in bringing to the front." *Havenfield Corp. v. H & R Block, Inc.*, 509 F.2d 1263, 1272 (8th Cir. 1975).  As such, Rule 26(e) cannot be used to bring in new contentions.  *Reid v. Lockheed Martin Aero. Co.*, 205 F.R.D. 655, 662 (D. Ga. 2001).

Even assuming that Geiger's second opinion could be considered supplementation, it was submitted more than a year after the discovery of the information giving rise to his new opinion. "For purposes of determining timeliness in procedural matters of this sort, the beginning time is the date when the facts are discovered, not some nebulous date when counsel first realized that there was some significance to them." *Havenfield Corp.*, 509 F.2d at 1272.  In his deposition, Geiger indicated that nothing about the condition of the pole, box, or hookups had changed since his initial visit on October 8, 2004.  The only difference was that on his November 15, 2005, visit he looked more closely and took some photographs.  [Record No. 33, pg. 3]  Rule 26(e) "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' [original] report." *Beller v. United States*, 221 F.R.D. 696, 701

(D.N.M. 2003).  In short, even if the second opinion could be considered supplementation, it was filed well after the discovery of the facts underlying it.

### C.    Harmlessness and/or substantial justification

Once it is determined that a party violated Rule 26 by making several untimely disclosures, a Court may strike those disclosures unless the party to be sanctioned (here, the Plaintiff) can show that those disclosure were either harmless or substantially justified.  The standard for determining whether an untimely disclosure is either harmless or substantially justified are unclear.  In *Roberts*, the Sixth Circuit read the commentary to Rule 37(c)(1) to "strongly suggests that [a] 'harmless' [violation] involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party".  *Roberts*, 325 F.3d at 783.  *Roberts* also notes the advisory committee notes which suggest that an "inadvertent omission" would also be considered "harmless".  *Id.*

The definition for what a "substantial justification" would be is also vague.  The Supreme Court has said that "substantially justified" does not mean "justified to a high degree," only "justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted).  Though specific examples are limited, the First Circuit has suggested "substantial justification" might include failing to disclose information which would be inadmissable at trial for any reason, including impeachment.  *Sheppard v. River Valley Fitness One, L.P.*, 428 F.3d 1, 12 (1st Cir. 2005).  Ultimately, the district court has broad discretion to determine whether substantial

justification can excuse a violation of Rule 26. *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000).

Here, Matilla offers only a bare explanation as to why her failure to follow this Court's Scheduling Order should be considered harmless or substantially justified. At best, Matilla offers three reasons why her failure to comply should be excused. First, as previously noted, Matilla contends that Geiger's second opinion was merely a supplementation of his June 2005 opinion. The Court has previously considered – and rejected – this assertion. (*See* discussion at page 5 *infra*.) Second, Matilla argues that SKRECC's own experts had viewed the allegedly unsafe hook-up and, therefore, cannot claim any surprise. [Record No. 32, pg. 10] Third, Matilla contends that she could not have learned that SKRECC intended to claim that service was being provided and the account kept current until she took the deposition of SKRECC's employee Carol Wright on August 31, 2005. [*Id.* pg. 3]

Matilla's second explanation (*i.e.*, that SKRECC's experts had previously viewed the hook-up and, therefore, could not claim surprise), might be more reasonable if Geiger's November 15, 2005, deposition had disclosed facts recently discovered rather than a second theory of liability based on pre-existing facts. As noted above, there was nothing to prevent Geiger from offering his opinion concerning the hazardous condition of the hook-up in his June disclosure. Instead, the evidence suggests that Matilla realized she could not prove her contention that the service should have been deactivated due to non-use, and attempted to add a new theory of liability well after the deadline for such had passed. As Rule 26(e) expressly

forbids this type of behavior, the Court considers it to be unreasonable. *Havenfield Corp.*, 509 F.2d 1263.

Matilla's final attempt to explain her dilatory conduct is to argue that "[SKRECC] was maintaining that this line was not abandoned in spite of its records that indicated 'nothing supplied by this service'". [Record No. 32, pg. 3]  Matilla argues that it did not become aware this was SKRECC's position until the August 31, 2005, deposition of Carol Wright, an employee of SKRECC.   This argument ignores that Matilla (and Geiger) had received copies of SKRECC's records indicating that the account had been paid on time since 1997.  Matilla and Geiger were on notice of this fact since before Geiger's June opinion.  [Record No 32, pg. 3] However, even if Matilla did not become aware of SKRECC's position until August 31, 2005, her conduct would still be unnecessarily dilatory and unreasonable.

Matilla requested numerous extensions of time to file expert disclosures regarding liability, but did not request any extensions for expert liability disclosures.  Nor did she ask to re-open discovery after learning of this allegedly new information.  Moreover, after learning this allegedly new information, Matilla took no action to address it until the morning of Geiger's deposition over two and one-half months later.  Matilla has not offered a satisfactory explanation as to why this delay was necessary.

Given all of the circumstances surrounding the delay in disclosure, the Court finds no justifiable reason as to why Matilla's dilatory conduct should be considered substantially justified.  In addition, the Court finds the delay was certainly not harmless.  Matilla offers no

explanation for harmlessness beyond stating that SKRECC still had a month left of discovery[3] or that discovery could be re-opened.  The Court finds neither of these arguments sufficient. Because Matilla's new theory of liability would require substantially different evidence and testimony from SKRECC, allowing Geiger's tardy testimony would further delay trial, and impose significant additional costs on SKRECC.  [Record No. 33, pg. 4-5]  Defendant should not have to bear the burden for such misconduct.

### D.   SKRECC's Motion for Extension of Time

Matilla had requested and received two extensions to identify experts regarding injuries and damages sustained, such that these disclosures were not due until October 1, 2005.  At that time, Matilla identified two physicians from Oregon whose specialties were internal medicine. Subsequently, on October 17, 2005, Plaintiff was seen by Dr. Sydney Piercey, a neurologist at the The Corvallis Clinic in Corvallis, Oregon.  Dr. Piercey appears to be the first treating medical professional that Matilla has seen since 2004 whose specialty is not internal medicine and who may have conducted certain diagnostic testing.

These medical records were first provided by Plaintiff by way of a supplemental Rule 26 disclosure mailed on November 16, 2005. Until the time of this disclosure, Matilla's only identified experts were her internist, Dr. Jason Phillips and the opinions of John Tierney, her retained vocational expert.  The disclosure of Plaintiff' treatment with Dr. Piercey now interjects a new theory of Plaintiff's impairment – one that was not disclosed until approximately two weeks before the discovery deadline in this matter and well after the deadline for Plaintiff to

---

[3]     This argument conveniently ignores that SKRECC's time for expert disclosures concerning liability has already passed.

disclose any experts.  Additionally, Matilla has not been diligent in complying with defendant's IME, requiring that it be rescheduled after the close of discovery.

For these reasons, Defendant SKRECC shall be given additional time to identify its own expert witness.  The Defendant had requested that an extension be granted to allow for an IME to be conducted by a neurologist on January 18, 2005.  However, as this date has already passed, SKRECC shall be given until February 15, 2005 to identify its expert witnesses.

### III.    CONCLUSION

The record clearly establishes that Matilla has violated Rule 26 on numerous occasions. Under Rule 37, the burden shifts to her to show why these violations were either harmless or substantially justified.  Matilla has not offered – and the Court has not discovered –  any reason which can be viewed as reasonable for Matilla's dilatory conduct.  Rule 37 gives the Court wide latitude to fashion a sanction for discovery misconduct, provided such sanction is proportional to the misconduct.  *Roberts*, 325 F.3d 776.  Given the circumstances, the Court agrees with SKRECC that the appropriate sanction is to exclude Geiger's testimony regarding his theory of an unsafe condition.  Geiger may still testify as to information contained in his June 2005 disclosure, but may not offer testimony outside that disclosure.

Accordingly, it is hereby as **ORDERED** follows:

1.     The Defendant's motions *in limine* to limit Plaintiff's Expert Testimony [Record No. 30] is **GRANTED**; and

2.     The Defendant's Motion for an Extension of Time to Identify Expert Witnesses [Record No. 31] is **GRANTED**.

This 20th day of January, 2006.



Signed By:

_Danny C. Reeves_

**United States District Judge**