UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| JOANN MATILLA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 04-380-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| SOUTH KENTUCKY RURAL | ) | **MEMORANDUM OPINION** |
| ELECTRIC COOPERATIVE | ) | **AND ORDER** |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant South Kentucky Rural Electric Cooperative Corp.'s ("SKRECC") Motion for Summary Judgment [Record No. 36]. The motion has been fully briefed, and is ripe for consideration. Because the Court finds that the acts of Michael Pittman and Jeff Gregory were a superseding cause of Matilla's injury, the Court will grant SKRECC's Motion for Summary Judgment. [Record No. 36] All other pending motions will be denied as moot.

## I.   BACKGROUND

Plaintiff Joann Matilla is a citizen of Oregon. At the time of the incident in question, Matilla was temporarily residing in Kentucky with her then-boyfriend, Michael Pittman. On February 16, 2004, Matilla and Third-Party Defendants Pittman and Jeff Gregory[1] were cutting

---

[1]   The Court entered a default judgment on the Defendant SKRECC's third party claims against Pittman and Gregory on January 20, 2006. *See* Record No. 38.

trees on the Harness property.  This property is serviced by a 7200 volt line which is operated

by SKRECC.  The line runs along Rocky Hill Road, which is a county road in Pulaski County,

Kentucky.

SKRECC is an electric cooperative.  Members apply to join the co-op by completing a

membership agreement.  Charges are calculated based on usage, but there is a minimum monthly

amount in the event usage falls below one kilowatt hour per month.  Although there is no

evidence that any electricity has been used by Harness, the minimum monthly amount has been

paid on time each month, and the account was current at least through December 2005.  The line

which services the Harness property also services another customer: Patsy Vaught.  And

although both customers are serviced by SKRECC on Rocky Hill Road, power to the  Harness

property could be discontinued without affecting the Vaught property.

On the date in question, Matilla, Pittman, Gregory and Gregory's girlfriend had already

cut down one tree, sawed it into pieces, and loaded it into the back of a truck.  Both Matilla and

Pittman were drinking beer during these activities.  Pittman and Gregory then attempted to cut

down a locust tree, but it became lodged in a nearby pine tree.  In an attempt to free the locust,

they decided to cut the pine.  This caused the locust tree to fall in such a way as to strike the

power line which ran along Rocky Hill Road.  The downed line struck Matilla, who was sitting

beneath it on the truck.  Matilla suffered serious injury as a result of being struck by this line.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

"Once a moving party has met its burden, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.' " *Keeneland Ass'n, Inc. v. Earnes*, 830 F.Supp. 974, 984 (E.D.Ky. 1993), *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415 (6th Cir. 2002).

Once the movant has satisfied this burden, the non-movant must go beyond the assertions made in the pleadings and come forward with specific evidence to demonstrate that there is a genuine issue of material fact. *Id.* The nonmoving party cannot rely upon the assertions in its pleadings; rather, that party must come forward with probative evidence, such as sworn affidavits to support its claims. *Celotex*, at 324. However, the trial court does not have a duty to search the entire record to establish that it is bereft of any genuine issue of material fact. *In re Morris*, 260 F.3d 654 (6th Cir. 2002). Rather, the nonmoving party has an affirmative

-3-

obligation to direct the court's attention to those specific portions of the record upon which it seeks to rely to create genuine issues of material fact.  *Id.*  In making this determination, the Court must review all the facts and the inferences drawn from those facts in the light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at 587.

### III.   ANALYSIS

To establish a claim for negligence, a plaintiff must show: (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach caused the plaintiff's damages.  *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992). The element of damages usually consists of two parts: actual injury and legal causation.  *Lewis v. B&R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001).

Here, the issue of duty is a question of law to be determined by this Court. The second element of the negligence claim (*i.e.*, breach of that duty) presents a question of fact.  The third element (*i.e.*, injury) presents a mixed question of law and fact.  More specifically, whether and to what extent the plaintiff suffered an injury is a fact determination, while causation presents a mixed question of law and fact.  *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88-89 (Ky. 2003), *citing Deutsch v. Shein*, 597 S.W.2d 141, 145 (Ky. 1980).

Neither party contests the fact that Matilla suffered severe injuries as a result of the electrical wire striking her.  As a result, the Court need not address the question of damage. Similarly, to the extent that SKRECC owed Matilla a duty of care (regardless of whether it was breached), this would be a question of fact for the jury to resolve.

Thus, the elements that remain for the Court's review include the duty of care owed to the Plaintiff and legal causation. The inquiry into the duty of care will necessarily involve an examination of whether the injuries Matilla suffered were a foreseeable result of the alleged negligence of SKRECC. The inquiry into legal causation and proximate cause ultimately turn on whether the actions of Pittman and Gregory should be considered as a superseding or intervening cause of Matilla's injuries, thereby absolving SKRECC of liability.

### A.    DUTY

Since the seminal case of *Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99 (N.Y. 1928), introduced the concept of foreseeability into negligence actions, the question of duty has involved two separate and independent inquiries. The first is to determine the standard of care which should have been followed by the defendant. The second is whether the cause of the plaintiff's injury was foreseeable by the defendant. Under Kentucky law, both the existence of a duty of care to the plaintiff and its underlying foreseeability inquiry are pure questions of law to be decided by the court. *James v. Meow Media, Inc.*, 300 F.3d 683, 691 (6th Cir. 2002), *citing Mullins*, 839 S.W.2d at 248. As a preliminary matter, the Court will note that if the injury suffered was not foreseeable by the defendant, the actual standard of care is irrelevant. This is because a determination that a particular plaintiff's injury was not foreseeable is legally intertwined with a determination that the defendant owed no duty of care to that particular plaintiff for that particular injury.

### 1.    Standard of Care

On the issue of standard of care, Kentucky courts hold that "one who is engaged in dealing in electricity must exercise the highest degree of care and skill known in the operation of its business to prevent injury to persons." *Kentucky Utilities Co. v. Woodrum's Adm'r*, 224 Ky. 33, 38 (Ky. 1928). However, that duty is not absolute. A utility company owes this extremely high standard of care only to a person "at any place where they have a right to be for either business or pleasure." *Id.* In the present case, there is conflicting evidence concerning whether Matilla and her party were trespassing on Harness' land or whether she had permission to be on the land for uses as varied as hunting and wood-cutting. Under the facts presented, the Court cannot determine whether Matilla was owed the "highest degree of care" or the more general "reasonable care under the circumstances." As it seems unlikely to be a dispositive issue, especially when balanced against questions of foreseeability and proximate cause, the Court need not reach a conclusion at this stage in the proceedings.

### 2.    Foreseeability

Generally, foreseeability is a question of whether the harm suffered by the plaintiff was one which could have been anticipated by the defendant. In *Palsgraf*, Judge Cardozo determined that a railroad simply did not owe a duty to protect the plaintiff against the precise harm suffered (*i.e.*, being struck by scales which fell as the result of a firework explosion which itself was the result of the dropping of an innocuous package). *Supra,* 161 N.E. 101. The Sixth Circuit has explained that, although Cardozo called Palsgraf an unforeseeable plaintiff, in fact the

determination "rested on the improbability of the harm that she suffered arising from the defendant's particular actions." *James v. Meow Media, Inc.*, 300 F.3d 683, 691 (6th Cir. 2002).

As the court noted in *Meow Media*, Cardozo's reasoning has been the subject of much criticism. *Id.* Given the facts of *Palsgraf*, it is easy to see why. Cardozo essentially determined that the railroad company employee who helped the passenger onto the train could not foresee that the innocuous package he carried could injure another passenger far down the platform. However, framed differently, why shouldn't the railroad company have foreseen that a passenger could be injured by the scales which fell on her, which were apparently loosely enough stacked to be dislodged by the lighting of fireworks? Foreseeability inquiries are further complicated by the tendency to conflate foreseeability and proximate cause. While foreseeability is a question of law that the Court may decide on summary judgment, proximate cause is a question of fact. On summary judgment, then, it is important to separate out which parts of the accident are described by each.

The uncertainty over the exact nature of foreseeability is particularly important in the present case because, when framed one way, Matilla's injuries were unforeseeable by SKRECC. However, when couched in different terms, her injuries were within the realm which SKRECC should have expected. For instance, SKRECC certainly could not have foreseen that several people who had been drinking and while possibly trespassing on private property, would cut down one tree, which would fall on a second tree and that the same people cut down a second tree which would cause the first tree to strike the power line, causing the energized line to hit Matilla. This run-on string of events (and sentence) highlights the unexpected consequences

arising from the actions of Matilla and her companions.  However, framed differently, the inquiry could be whether SKRECC, by failing to de-energize the line, should have anticipated a downed tree causing the line to fall into a public roadway.

Kentucky courts have established a two-part test on the foreseeability of an accident involving a power line.  In *Kentucky & West Virginia Power Co.*, the Kentucky Supreme Court determined that:

> [t]he two controlling factors upon which rest the determination of whether, in the exercise of the utmost care, a power company reasonably may have anticipated the character of accident which occurred are the location of the line and the nature of the operation which caused the injury.

*Id.*, 267 S.W.2d 717, 718 (1954).  Under the facts presented, considering that the line was near the road and that parts of trees regularly come into contact with power lines, the second characterization of the accident above could certainly be foreseeable.

With this in mind, it is this latter framing which is more clearly in accord with the Sixth Circuit's reading of *Palsgraf* and better recognizes the distinction between foreseeability and proximate cause.  In *Meow Media*, the question is one of improbability of harm arising from the defendant's actions.  300 F.3d at 691.  Here, the allegedly negligent action of SKRECC was in leaving the power line energized.  The injury that resulted was Matilla's being struck by that energized line.  This is a foreseeable result.  Had the line come down due to high wind, or a downed branch, it would still be foreseeable.  Further, the actions of Pittman and Gregory in cutting down the tree which caused the line to fall are questions of proximate and/or legal

causation.[2]  Similarly, Matilla's alcholic beverage consumption and her being located beneath the wire while trees were being cut down are questions of comparative negligence.

By placing the decision over the existence of a duty of care in the hands of the court, Kentucky courts have made the duty of care a "policy determination." *Mullins*, 839 S.W.2d 245, 248.  As a matter of policy, the Court is unwilling to say that a plaintiff might never recover where their injury is the result of a downed power line, even where a subsequent act caused the downing of the line.  The Court is also mindful of Kentucky's policy of holding utilities to an extremely high duty of care.  Thus, this Court must conclude that the nature of plaintiff's injury was a foreseeable result of SKRECC's not having de-energized the line.  However, the Court reaches no decision regarding whether this failure was negligent, as that question is more properly left for the trier of fact.  The Court also notes that a finding of foreseeability under a duty of care analysis would not preclude a finding that the chain of events which led to the injury were foreseeable under a superseding cause analysis.  That question will be addressed below.

### B.  SUPERSEDING CAUSE

Where the allegedly negligent act or omission is the sole cause of a plaintiff's injury, cause-in-fact and legal causation merge.  Where, however, it is the act of a third-party which brings about the injury, this analysis is substantially complicated.  Before addressing superseding cause, a brief discussion of the relevant terms is helpful.

Although Kentucky courts often use terms of legal causation interchangeably, they generally subscribe to the Restatement of Torts, Second.  *NKC Hospitals, Inc., v. Anthony*, 849

---

2      This issue is addressed in section B, *supra*.

S.W.2d 564, 568 (Ky. App. 1993); *Deutsch v. Shein*, 597 S.W.2d 141 (Ky. 1980). Under the Restatment of Torts, Second §431, the initial threshold for legal causation is the "substantial factor" test. As the comments to the Restatement make clear, this is actually a slightly higher threshold than the "but for" test. As long as the alleged negligence of the defendant is within the chain of events leading to the plaintiff's injury, the "but for" test is satisfied. However, to qualify as a "substantial factor," the plaintiff must show that the alleged negligence of the defendant had a "appreciable effect" in bringing about the plaintiff's injury. Restatement of Torts, Second §433.

Once the negligence of the defendant has been determined to be a "substantial factor," the defendant would be liable for the injuries of the plaintiff unless the defendant "created a situation harmless unless acted upon by other forces for which the actor is not responsible." Restatement of Torts, Second § 433. This is what is more commonly known as a superseding or intervening cause. And while Kentucky courts often use the two terms interchangeably, there is a significant difference, as noted in *NKC Hospital*. 849 S.W.2d at 568.

Under the Restatement definition, a superseding cause is "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." Restatement of Torts, Second § 440. By contrast, an intervening cause is "one which actively operates in producing harm to another after the actor's negligent act or omission has been committed." Restatement of Torts, Second § 441. The reason this distinction is necessary is that only if an intervening cause rises to the level of a superseding cause will the defendant be relieved of liability. Almost

-10-

all acts of a third-party can be considered intervening causes, but clearly not all acts of a third-party relieve the defendant of liability.

In *NKC Hospitals*, the court laid out a six part test to determine whether an intervening cause rises to the level of superseding cause.  849 S.W.2d at 568; *see also* [Record No.36, pg. 15].  This test is substantially similar to the test found in the Restatement of Torts, Second §442.  As the actions of Pittman and Gregory were clearly (1) intervening acts (2) unrelated to SKRECC's decision not to de-energize the line, the only question is whether the negligence of the third-part was (4, 5) reasonably foreseeable by SKRECC.  *NKC Hospitals*, 849 S.W.2d at 568.

It is here, in parts (4) and (5) that Kentucky courts re-insert considerations of foreseeability into a determination of superseding cause.  And although proximate causation is a question for the jury, the determination of whether a superseding cause relieves a defendant of liability is "never submitted to the jury" and must be determined by the Court.  *Id*. at 569.  In *NKC Hospital*, the alleged negligence (medical malpractice) of the hospital was substantially similar to the negligence of the intervening third-party, the plaintiff's primary physician.  *Id.* at 568.  However, in the area of negligence by utilities, the complained-of negligence is often dissimilar to the negligent acts of the intervening third-party.  As such, the Court must look elsewhere for situations in which Kentucky state courts have considered the intervening cause analysis in a utility context.

In *Lambert v. Franklin Real Estate*, 37 S.W.2d 770 (Ky. App. 2000), Kentucky's court of appeals considered a case in which several workmen, while installing a water well,

accidentally raised a pole into contact with an uninsulated power line.  While charging the electric utility company with the highest degree of care, the court noted:

> Generally, an electric utility company is not liable where no injurious consequences would be reasonably perceived, or the act complained of reasonably anticipated, nor would the company be liable if the injury occurred through some independent or unrelated and efficient cause.

*Lambert*, 37 S.W.3d at 777.  This language, while confirming Kentucky's reliance on foreseeability and superseding cause analysis, also demonstrates how the two analyses are easily conflated.[3]  Despite this language, the decision in *Lambert* actually turned on the question of whether a directed verdict was proper concerning the applicable standard of care.  *Id.* at 778.

*Dixon v. Kentucky Utilities Co.*, 174 S.W.2d 19 (Ky. 1943), is also instructive.  In *Dixon*, a child was injured when she came in contact with a fence that had been electrified by a sagging utility pole.  The pole was allegedly negligently maintained, which caused it to sag when the next pole down the line was knocked over by a car.  In holding that it was the negligent conduct of the motorist and not negligent maintenance of the pole that created liability, the court cited a case with similar facts from Indiana, and adopted its language. The court held:

> An essential element of proximate cause is the requirement that the result must be such as might reasonably have been anticipated in the ordinary experience of men. In applying this rule to a case like the instant one, wherein the alleged negligence merely created a condition by which the injury was made possible and the subsequent independent act of an intervening agency caused the injury, logic requires not only that the *type of injury* should have been reasonably anticipated but that the *intervention of the independent agency* should have been anticipated.

---

3       This language also makes clear that Matilla's contention that Kentucky has rejected the doctrine of superseding causation is incorrect.

-12-

*Id.* at 38 (emphasis added), *citing Indiana Service Corporation v. Johnston*, 34 N.E.2d 157, 158 (Ind. App. 1941).

In *Davis*, even though the court assumed that the pole's negligent maintenance created the potential for injury, the car which crashed into the next pole down the line was the "immediate and direct cause of the death." *Dixon*, 174 S.W.2d at 23. The court found it was unforeseeable that a car would crash into a different pole with sufficient force to bring down the pole which had electrified the fence. *Id.* at 23-24. As such, the car represented a superseding cause which relieved the utility company of liability, regardless of any possible negligence in maintenance.

Accordingly, while this Court finds that the type of injury which the plaintiff suffered was foreseeable under a duty of care analysis, the actual chain of events which brought about that injury were not. Thus, viewed in the light most favorable to the plaintiff, on February 16, 2004, Matilla, Pittman, Gregory, and another were cutting deadwood on the Harness property, having consumed "a couple of beers a piece." [Record No. 40, pg. 15] The two men cut down a locust tree measuring approximately 60 feet in length. As it fell, it became lodged in a pine tree of approximately 30 feet in length. And while Pittman was aware of the power line, he and Gregory decided to cut down the pine tree. [Record No. 40, pg. 5-6] As the pine tree fell, the locust tree struck the power line. Plaintiff was sitting directly under the power line in an open part of a pick-up truck, and was struck by the line.

The Court must conclude that this chain of events was unforeseeable by SKRECC. A utility company cannot anticipate that several people would create a domino effect by which a

-13-

power line is knocked down onto a person who is sitting beneath it, despite knowing that trees are being cut down.  The case at bar is similar to *Dixon*, in that SKRECC's alleged negligence in not de-energizing the line created a condition by which injury was made *possible*.  However, it was the subsequent, independent acts of Pittman and Gregory that *caused* the actual injury. The intervening acts of Pittman and Gregory rise to the level of a superseding cause, precluding a finding of liability against SKRECC.

### IV.  CONCLUSION

Having determined the actions of Pittman and Gregory were a superseding cause precluding a finding of liability against SKRECC, the Court need not reach determinations on the issues of trespassing, the National Electric Safety Code, permanent abandonment, or comparative negligence.  Accordingly, for the reasons discussed herein, it is

**ORDERED** as follows:

(1)    South Kentucky Rural Electric Cooperative Corp.'s Motion for Summary Judgment is **GRANTED** [Record No. 36].

(2)    All other pending motions are **DENIED** as moot.  [Record Nos. 42, 49, 55, 56]

(3)    All claims asserted in this action having been resolved, this matter is **DISMISSED** and **STRICKEN** from the Court's active docket.

This 28th day of February, 2006.



Signed By:

*Danny C. Reeves* DCR

**United States District Judge**