UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| JOANN MATILLA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 04-380-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| SOUTH KENTUCKY RURAL ELECTRIC COOPERATIVE CORPORATION, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Plaintiff Joann Matilla's ("Matilla") motion to amend or vacate the order granting summary judgment to the Defendant South Kentucky Rural Electric Cooperative Corporation ("SKRECC"). [Record No. 73] Because Matilla's motion is largely a re-argument or her earlier response and because she presents no newly discovered evidence or manifest errors of fact or law, it will be denied.

**I.   BACKGROUND**

Matilla is a citizen of Oregon. At the time of the incident in question, she was temporarily residing in Kentucky with her then-boyfriend, Michael Pittman. On February 16, 2004, Matilla and Third-Party Defendants Pittman and Jeff Gregory[1] were cutting trees on the

---

[1] The Court entered a default judgment on SKRECC's third party claims against Pittman and Gregory on January 20, 2006. *See* Record No. 38.

Harness property. This property is serviced by a 7,200 volt line which is operated by SKRECC. The line runs along Rocky Hill Road, which is a county road in Pulaski County, Kentucky.

SKRECC is an electric cooperative. Members apply to join the co-op by completing a membership agreement. Charges are calculated based on usage, but there is a minimum monthly amount in the event usage falls below one kilowatt hour per month. Although there is no evidence that any electricity has been used by Harness, the minimum monthly amount has been paid each month, and the account was current at least through December 2005. The line which services the Harness property also provides service to Patsy Vaught. And although both customers are serviced by SKRECC on Rocky Hill Road, power to the Harness property could be discontinued without affecting the Vaught property.

On the date in question, Matilla, Pittman, Gregory and Gregory's girlfriend had already cut down one tree, sawed it into pieces, and loaded it into the back of a truck. Both Matilla and Pittman were drinking beer during these activities. Pittman and Gregory then attempted to cut down a locust tree, but it became lodged in a nearby pine. In an attempt to free the locust, they decided to cut the pine. This caused the locust to fall in such a way as to strike the power line which ran along Rocky Hill Road. The downed line struck Matilla, who was sitting beneath it on the truck. Matilla suffered serious injury as a result of being struck by this line.

This Court granted summary judgment for SKRECC on February 28, 2006. [*See* Record No. 71]; *Matilla v. S. Ky. Rural Elec. Coop. Corp.*, 2006 U.S. Dist. LEXIS 7788 (E.D. Ky. 2006). The Court determined that the actions of Pittman and Gregory represented a superseding

cause of the injury to Matilla. Therefore, SKRECC was relieved of liability for any alleged negligence in leaving the line energized.

## II.     LEGAL STANDARD

Rule 59(e) of the Federal Rules of Civil Procedure authorizes motions to reconsider. However, "a motion under Rule 59(e) is not intended to provide the parties an opportunity to relitigate previously-decided matters or present the case under new theories. Rather, such motions are intended to allow for the correction of manifest errors of fact or law, or for the presentation of newly- discovered evidence." *In re Larson*, 103 B.R. 896, 897 (Bankr. S.D. Ohio 1989). *See also General Truck Drivers Local No. 957 v. Dayton Newspapers, Inc.*, 190 F.3d 434, 445 (6th Cir.1999) (Clay, J. dissenting), *cert. denied*, 528 U.S. 1137 (2000) ("Rule 59(e) motions serve a limited purpose and should be granted for one of three reasons: (1) because of an intervening change in controlling law; (2) because evidence not previously available has become available; or (3) because it is necessary to correct a clear error of law or prevent manifest injustice."); *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir.1998) ("A motion under Rule 59(e) is not an opportunity to re-argue a case."); *Harley-Davidson Motor, Inc. v. Bank of New England*, 897 F.2d 611, 616 (1st Cir.1990) ("Rule 59(e) motions are aimed at *re* consideration, not initial consideration.") (emphasis in original); *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986) ("Motions for a new trial or to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence. These cannot be used to raise arguments which could, and should, have been made before the judgment issued.")

In summary, the party seeking reconsideration cannot simply seek a second bite of the apple. Instead, it bears "[t]he burden of demonstrating the existence of a manifest error of fact or law." *In re Nosker*, 267 B.R. 555, 565 (Bankr. S.D. Ohio 2001).

### III.   ANALYSIS

Matilla does not allege that there has been either an intervening change in controlling law or that new evidence has become available. Therefore, her motion to alter or vacate is appropriate only if she is able to show a clear error of law or to prevent manifest injustice, which must be something more than a disagreement with the Court's previous opinion. Before addressing Matilla's argument's regarding superseding cause, it is necessary to address a misconception in her argument on reconsideration. The Court did not, as Matilla contends, find that "issues of duty, breach and damages were questions of fact for the jury to resolve." [Record No. 73, pg. 5] Neither did the Court "conclude that Plaintiff's injury from being struck by a downed power line was a foreseeable result." *Id.*

In granting summary judgment, the Court specifically noted that "the issue of duty is a question of law to be determined by this Court." *Matilla* at *6. The nature of the duty the defendant owes the plaintiff is clearly a question of law. *James v. Meow Media, Inc.*, 300 F.3d 683, 691 (6th Cir. 2002). The Court did not decide what standard of care would apply because it was not dispositive in light of the superseding cause analysis. *Matilla* at *9.

Regarding the question of foreseeability, the Court determined only that the nature of Matilla's injuries (i.e., electrocution) was foreseeable, insofar as she was struck with an energized power line. *Id.* at *13-14. However, in granting summary judgment based on

superseding cause, the Court specifically determined that the chain of events which led to Matilla's injury (specifically, the intervention of Pittman and Gregory) was not foreseeable by SKRECC.

Having clarified those points, the Court next turns to Matilla's three arguments as to why summary judgment should not be granted. First, Matilla contends that Kentucky has largely abandoned the doctrine of superseding cause. [Record No. 73, pg. 6] Second, to the extent that doctrine still applies, she asserts that the Court incorrectly interpreted and applied *NKC Hospitals v. Anthony*, 849 S.W.2d 564 (Ky. App. 1993) to the facts presented here. [Record No. 73, pg. 6] Third, she posits that the Court failed to view the evidence in the light most favorable to her, and failed to grant her all appropriate inferences from the evidence. *Id.* at 9-10.

**A. Kentucky Has Not Abandoned Superseding Cause Analysis**.

Matilla's argument that Kentucky has abandoned the doctrine of superseding causation is not well taken, as demonstrated by the case she cites for this proposition. Matilla contends that *Britton v. Wooten*, 817 S.W.2d 443 (Ky. 1991), embraces an abandonment of the superseding cause doctrine. [Record No. 73, pg. 6] However, the doctrine which *Britton* rejects as archaic is the "all-inclusive general rule that [] 'criminal acts of third parties . . . relieve the original negligent party from liability.'" *Britton.* at 449. Nowhere does *Britton* suggest that Kentucky has or is abandoning superseding cause. Indeed, *Britton* confirms Kentucky's adoption of and reliance on the Restatement (Second) of Torts, which embraces the superseding cause analysis. *Id.* ("Sections [] 448 and 449 [] also must be read in conjunction with Restatement (Second) of Torts, § 302B . . .").

Kentucky courts have continued to apply superseding cause analysis in tort actions. Moreover, Kentucky continues to rely on the Restatement (Second) of Torts, which embraces a superseding cause analysis. Thus, there is no error in the Court's reliance on that doctrine.

### B. Superseding Cause Analysis under *NKC Hospitals*.

In the alternative, Matilla argues that the Court has misapplied Kentucky's formulation of superseding analysis, particularly the six part test of *NKC Hospitals*, 849 S.W.2d 564. While she does find fault with the Court's application of the first and second factor, she does object to the Court's finding regarding the sixth part of the *NKC Hospitals* test (foreseeability of injury). Matilla argues that, because the Court found that the nature of Matilla's injury (i.e., electrocution) was foreseeable by SKRECC, that finding satisfies the sixth part of the test. [Record No. 73, pg. 7]; citing *Matilla* at *14.

Matilla's argument on this point fails for two interrelated reasons. First, the portion of the opinion to which Matilla cites for the proposition that the Court found the injury foreseeable is the section which address foreseeability as a part of the duty of care analysis. As the Court noted, this is a distinct inquiry from foreseeability as it relates to proximate causation. *Matilla* at *12 ("this []framing . . . better recognizes the distinction between foreseeability and proximate cause.") Part six of the *NKC Hospitals* test clearly refers to the foreseeability of injury as it relates to proximate causation. *NKC Hospitals*, 849 S.W.2d at 568 ("the distinction between a legal cause and a mere condition [is the] foreseeability of injury"). As the Court noted in its opinion, this is a separate and distinct foreseeability analysis from that undertaken when determining the duty of care. *Compare Matilla* at *12-14 with *Matilla* at *17-18.

Within her objection to the Court's application of part six of the test, Matilla also challenges the foreseeability analysis as it relates to proximate (or legal) causation. She contends that the specific act in the chain of causation need not be foreseeable. [Record No. 73, pg. 7] However, this argument is contrary to *Lambert v. Franklin Real Estate*, 37 S.W.3d 770 (Ky. App. 2000). There, the court determined that "an electric utility company is not liable where no injurious consequences would be reasonably perceived, or the act complained of reasonably anticipated." *Matilla* at *18, *citing Lambert* at 777. Clearly, the foreseeability of the act is an important part of proximate causation analysis, and therefore superseding cause analysis.[2]

Next, Matilla asserts that the Court overlooks the third factor of the *NKC Hospitals* test, which provides that "the intervening act or event must, itself, be capable of bringing about the injury." *NKC Hospitals* at 586. She argues that, because the falling trees could not have inflicted electrical damage, the actions of Pittman and Gregory could not meet this part of the test, and therefore cannot be a superseding cause.

Matilla is essentially arguing that an intervening act by a third party can only be a superseding cause where both the original act and the intervening act are capable of inflicting the exact same injury. The Court cannot agree. Such a narrow holding would render the

---

2    Interestingly, the sixth part of the NKC Hospitals test suggests an alternative means by which summary judgment could be granted. "[T]he original act must, in itself, be a substantial factor in causing the injury, not a remote cause. The original act must not merely create negligent condition or occasion; the distinction between a legal cause and a mere condition being foreseeability of injury." Although the Court did not reach this question, had it found SKRECC's alleged negligence "merely create[d] a condition making an injury possible, and a subsequent independent act cause[d] the injury", no liability for Matilla's injury would attach because SKRECC's alleged negligence could not be considered "the proximate cause thereof." *Long v. Ponca City Hosp., Inc.*, 1979 O.K. 32 (1979), cited by *NKC Hospitals* at 568.

superseding cause doctrine nearly inapplicable. Instead, the "injury need only flow directly from the event". *Welsh v. Galen of Va., Inc.*, 128 S.W.3d 41, 57 (Ky. App. 2001), *citing Deutsch v. Shein*, Ky., 597 S.W.2d 141 (1980).

Matilla also challenges the Court's application of prongs four and five of the *NKC Hospitals* test. And while she states that she "believes that the Court's conclusion on requirements 4 and 5 are erroneous," she offers no argument as to how these conclusions are in error. [Record No. 73, pg. 6] Thus, the Court will consider these objections abandoned.

### C. Standard on Summary Judgment

Matilla's final objection to the Court's opinion granting summary judgment is that, while the Court correctly cited the standard under which the evidence should be evaluated on summary judgment, it failed to apply that standard. That is, she argues that the Court failed to view the evidence in the light most favorable to her, and failed to give her the benefit of all logical inferences flowing from the evidence. As an initial matter, the Court notes that while it must view the evidence in the light most favorable to her, and resolve any non-material disputes in her favor, it is not required to ignore all unfavorable evidence.

The evidence upon which the Court relied was taken exclusively from Matilla's Response in Opposition to Summary Judgment. [Record No. 40] And while Matilla now claims that Pittman's knowledge of the overhead line is either unimportant or a fabrication, she previously relied on this fact to argue that Pittman and Gregory thought the line was not energized. [Record No. 40, pg. 5-6] ("On cross examination, he did acknowledge that he was operating under the expectation that the line was de-energized because it never went anywhere and had never gone

anywhere for years. (Pittman Depo., pp. 33 - 34).  He never considered the electric line when he cut the tree. (Pittman Depo., p. 52).  He thought it was off.")  Similarly, with regards to alcohol consumption, the fact that Pittman and Matilla had been drinking was taken from Matilla's Response.  [Record No. 40, pg. 15]  Even omitting these facts, the Court's opinion was the SKRECC could not foresee the chain of events which took place leading to Matilla's injury.  Matilla has presented no new evidence, nor any real argument, that this chain of events should have been foreseeable beyond a bald assertion that it was foreseeable.

## IV.    CONCLUSION

For the reasons discussed above, it is hereby **ORDERED** that Matilla's motion to alter or vacate [Record No. 73] is **DENIED**.

This 5th day of May, 2006.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge